UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Faytrena C Rhodes,                      Case No. 24-20838-beh
                                              Chapter 13
                Debtor.

**DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN**

        The debtor filed her Chapter 13 petition on February 23, 2024, and her amended plan was confirmed August 13, 2024. She has since requested to modify her plan, ECF No. 46, and the Chapter 13 trustee objected to the proposed modification on feasibility grounds. ECF No. 49. After two hearings, the parties submitted letter briefs, and the Court took the matter under advisement. ECF Nos. 58, 59.

        The debtor and trustee agree that their dispute boils down to a simple question: Whether present-value interest paid on a secured claim under § 1325(a)(5)(B)(ii) begins accruing from the date the petition was filed, or from the date the plan is confirmed.[1] The debtor's proposed plan does not provide for funds sufficient to pay post-petition, pre-confirmation interest on the claim secured by the debtor's 2018 Chrysler 300 vehicle, but is otherwise feasible if such interest is not required. For the reasons that follow, the Court concurs with the decision *In re Hammond*, No. 24-20428 (Bankr. E.D. Wis. Jan. 21, 2025) (Halfenger, C.J.), and concludes that pre-effective date *Till* interest is not required.[2] The debtor's plan, based on the current Eastern District of

---

[1] All statutory citations are to Title 11 of the United States Code.

[2] The controversy in this case was raised on an objection to the debtor's request to modify her Chapter 13 plan. ECF No. 46. This decision should be read as supplementary to the decision in *Hammond*, which was decided on an original plan confirmation. No. 24-20428 (Bankr. E.D. Wis. Jan. 21, 2025).

Wisconsin Model Plan, took effect on the date of confirmation. Therefore, the trustee's objection on that basis is overruled.

## DISCUSSION

The Court may modify a confirmed Chapter 13 plan on a party's request and within certain parameters. 11 U.S.C. § 1329(a). Such a proposal may modify any of four terms of the plan, § 1329(a)(1-4), and must be consistent with other provisions of Chapter 13, notably the requirements of § 1325(a). § 1329(b)(1). Relevant here is the requirement that, for each secured claim treated by the plan, the debtor either (A) obtain the creditor's consent, (B) provide a lien securing the claim, equal monthly payments, and "value, as of the effective date of the plan, . . . not less than the allowed amount of the secured claim," or (C) surrender the collateral to the claim holder. § 1325(a)(5). The debtor's plan elected the § 1325(a)(5)(B) (cramdown) option and proposed to pay the full amount of the secured claim, $29,461.00, with 9.5% annual interest. ECF No, 2, at 4.

The parties dispute whether the present-value adjustment called for in § 1325(a)(5)(B)(ii), and applied in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), requires that interest accrue from the petition date or the plan confirmation date. The trustee argues that longstanding practice in this district (and others) has required that debtors pay *Till* interest starting from the petition date. ECF No. 59, at 1. The justification given is that this treatment avoids devaluation by inflation and opportunity cost over the pre-confirmation period which can span months or even years, thus ensuring each secured creditor the present value of their claim. *Id.*, at 2. The debtor argues that payment of pre-confirmation interest is foreclosed by statute and caselaw notwithstanding local practice.[3] ECF No. 58, at 3-5.

---

[3] The debtor explains that this issue had not been raised earlier because interest rates have only recently been high enough to justify the effort and expense in challenging the trustee's position. ECF No. 58, at 5. Coupled with a perceived trend toward slower plan confirmation, the amount of interest now has a meaningful impact on a debtor's plan payment. *Id.*

Section § 1325(a)(5)(B)(ii) simply requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [each allowed secured] claim [be] not less than the allowed amount of such claim." The only ambiguity lies in how the terms "value, as of the effective date of the plan" and "allowed amount of such claim" are defined.

**A.    Value, as of . . .**

The meaning of both terms must be found within the context of the whole Bankruptcy Code. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (statutory construction of the bankruptcy code is a "holistic endeavor."). Beginning with the first term, courts have consistently found the phrase "value, as of" to indicate the adjustment of a future stream of payments to its present value, typically by adding some amount of interest to the future payments. *See Till*, 541 U.S. at 469; *In re Burgess Wholesale Mfg. Opticians, Inc.*, 721 F.2d 1146, 1147 (7th Cir. 1983); *In re Topp*, 75 F.4th 959, 961 (8th Cir. 2023). This interpretation is supported by legislative history surrounding the Bankruptcy Code. H.R.Rep. No. 595, 95th Cong., 2d Sess. 408 (1978) ("'Value, as of the effective date of the plan,' as used in proposed [§ 1325(a)(5)(B)], indicates that the promised payment under the plan must be discounted to present value as of the effective date of the plan."). Regardless, both parties agree that § 1325(a)(5)(B)(ii) prescribes an adjustment to present value, and this is commonly satisfied by adding interest. ECF No. 58, at 3; ECF No. 59, at 4. *See also Hammond*, at 3-4.

**B.    . . . the effective date of the plan**

The debtor is correct to argue that the "effective date of the plan" is, in most cases, the date that the plan is confirmed and takes effect. Although not as a holding, the Supreme Court in *Rake v. Wade*, 508 U.S. 464, 469 (1993) seemingly settled the debate: "[U]nless the creditor accepts the plan or the debtor surrenders the collateral to the creditor, § 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments in satisfaction of the claim . . . must equal the present

dollar value of such claim *as of the confirmation date.*" Lower courts are bound to follow the guidance of Supreme Court dicta absent some compelling reason to believe the Court would reach a different conclusion today. *See Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994) ("Where it is a recent dictum that considers all the relevant considerations and adumbrates an unmistakable conclusion, . . . the dictum provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it."). As to this question, there is no reason to believe the Supreme Court would conclude differently. Section § 1325(a)(5)(B)(ii) at the time *Rake* was decided used the same "value, as of the effective date of the plan" language as is used in today's Code. 11 U.S.C. § 1325(a)(5) (1986) (originally enacted Pub. L. No. 95-598, Nov. 6, 1978, 92 Stat. 2649, effective to June 18, 1998). Considering the BAPCPA reforms in 2005 which rewrote much of § 1325, the choice by Congress to retain this language is further evidence that its meaning has not changed.

As the debtor further points out, "effective date of the plan" ordinarily has been found to mean "confirmation date" in cases interpreting other provisions of the code. *See Hamilton v. Lanning*, 560 U.S. 505, 518 (2010) (interpreting § 1325(b)(1), "effective date of the plan" is "the date on which the plan is confirmed and becomes binding."); *Burgess*, 721 F.2d at 1147 (under § 1129(a)(9)(C), payments as adjusted "must equal the face value of the claim at the time the plan is confirmed"). And without retreading old ground, another bankruptcy court in this district discussed the plain meaning of "effective date of the plan" in great detail as it is used in 11 U.S.C. § 1325(a)(4). *In re Buettner*, 625 B.R. 78 (Bankr. E.D. Wis. 2021) (further discussed in *Hammond*, at 5-6).

The trustee attempts to distinguish *Buettner* by arguing that it was decided before the current Model Plan, which provides debtors the option of when to begin their plan term, was implemented. ECF No. 59, at 4. But that is not a meaningful distinction. It is true that the current Eastern District of Wisconsin Chapter 13 Model Plan gives debtors the ability to select when their

first plan payment is due and when the applicable commitment period begins.[4] Flexibility on the date the debtor's term of payments begins under the plan, however, does not mean that the plan itself becomes effective on that date. Rather, it means that some Chapter 13 plans have payments and an "applicable commitment period" that begin retroactive to the date of confirmation. *See In re Kinne*, No. 19-49692 (Bankr. E.D. Mich. Sep. 11, 2020) ("[T]he 'effective date of the plan' and the 'applicable commitment period' are separate concepts-neither of which controls the other."). This is consistent with the general rule that debtors begin making payments within 30 days of filing the petition in the amount proposed by the plan or that provides adequate protection to secured creditors. § 1326(a)(1). Until the plan has been confirmed, these payments are not payments "under the plan," § 1325(b)(1)(B), they are payments "*in the amount—proposed by the plan.*" § 1325(a)(1)(A) (emphasis added). *See In re Goldapske*, 657 B.R. 855, 859 (Bankr. E.D. Wis. 2024).

The trustee does not expressly argue that the effective date should be defined as the petition date, however he claims that "arguments could be made" as to various possible dates. ECF No. 59, at 2. This position attempts to sidestep the effective date by either conflating it with the beginning of the commitment period or by reading it out of the test altogether. But it does not overcome the fact that the "effective date," which is ordinarily the confirmation date, must fit into the test *somewhere*. If the debtor's obligation, as the trustee argues, is to pay interest to adjust the claim value from the present (the petition date) to the future (the date the payment is made under the plan), then the phrase "as of the effective date of the plan" is surplusage with no meaning. Attempting to find the intent of Congress can be difficult, but here it is not a stretch to presume that if Congress intended that the present value calculation be performed with respect to the petition date, it would have used the term "petition date" or its many synonyms. Congress knew how to reference the

---

[4] *See* Model Plan (updated as of 5/2021), https://www.wieb.uscourts.gov/local-sample-forms.

petition date and did so many times, so the failure to do so here—moreover, the choice of a specifically different date—suggests that the trustee's proposal conflicts with legislative intent. *See, e.g.,* § 348(f)(1)(A) ("as of the date of filing of the petition"); § 541(a)(1) ("as of the commencement of the case"); § 707(b)(6) ("as of the date of the order of relief"). Any reading of § 1325(a)(5)(B)(ii) that does not consider the effective date would be contrary to basic canons of statutory interpretation.

The trustee separately relies on the decision *In re Brill*, 350 B.R. 853 (Bankr. E.D. Wis. 2006) (McGarity, C.J.). In it, the court stated: "This power to modify [under § 1322(b)(2)] is, of course, subject to the requirement of section 1325(a)(5) that the secured creditor receive the present value of its claim as of the petition date." *Brill*, 350 B.R. at 855, 856. This discrete statement appears to squarely support the trustee's position. The decision as a whole, however, does not analyze the Code or cite to authority that might help explain why "petition date" can be substituted for "effective date of the plan." *Id.* There is substantial evidence, also, to question whether the parties and court in *Brill* themselves understood it to require interest from the petition date. *See Hammond*, at 11-14 (collecting evidence from the docket in *Brill*). As decisions by other bankruptcy courts in this district are persuasive authority, but not binding, this particular statement in *Brill* must be considered for its persuasive value alone. On that, it fails given the weight of authority against it.[5]

Therefore, unless the order confirming the plan or the plan itself provide a different date, "the effective date of the plan" under § 1325(a)(5)(B)(ii) means the date that the plan is confirmed.

---

[5] *Brill* has been cited in decisions by other courts for its holding that secured creditors are entitled to *Till* interest even on "910 vehicle" claims, but never, to this Court's knowledge, for the proposition that interest begins to run from the petition date. *See, e.g., In re Taranto*, 365 B.R. 85, 89 (B.A.P. 6th Cir. 2007) (cited for its holding); *In re Powell*, No. 12-12716, 2013 WL 1829837, *1 (Bankr. D. Kan. May 1, 2013) (citing *Brill* for its holding only, and substituting "effective date of the plan" for "date of confirmation"); *In re Roth*, No. 06-11330, 2007 WL 1385383, *4 (Bankr. N.D. Ind. May 4, 2007) (rev'd on other grounds) (citing *Brill* for its holding only, and separately stating: "No plan is effective unless and until it has been confirmed.").

## C. Allowed amount of such claim

The trustee's other textual argument is that interest must accrue from the petition date because the value of the creditor's "allowed secured claim" would otherwise fall over time, violating the creditor's right to receive "value, as of the effective date of the plan, . . . not less than the allowed amount of such claim." § 1325(a)(5)(B)(ii). In other words, the trustee argues that the interest requirement stems from the time-adjusted value of the claim itself, not from the diminished value of the property distributed through the plan to pay the claim. ECF No. 59, at 6. The trustee cites a portion of the Supreme Court's *Till* decision for support:

> "Rather, [§ 1325(a)(5)(B)] simply requires bankruptcy courts to ensure that the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total 'value, as of the effective date of the plan,' that equals or exceeds *the value of* the creditor's allowed secured claim—in this case, $4,000."

*Till*, 541 U.S. at 474 (emphasis added). The Supreme Court's gloss on § 1325(a)(5)(B)(ii) is subtle but possibly significant; rather than guaranteeing secured creditors the "allowed amount" of their claim, *see* § 1325(a)(5)(B)(ii), the plurality states that the creditor must receive "the value of" the claim. Therefore, the trustee argues, the creditor's claim must be present-value-adjusted to the date that the amount of its claim was fixed: the petition date. 11 U.S.C. § 502(b); ECF No 59, at 6.

This argument, even benefitting from the language of *Till*'s plurality opinion, cannot be squared with a plain reading of the Bankruptcy Code. In bankruptcy law, "value," and "value, as of" are not synonymous terms: "[W]here the bankruptcy code intends a court to discount something to present value, the Code clearly uses the term 'value, as of' a certain date." *In re Oakwood Homes Corp*, 449 F.3d 588, 597 (3rd Cir. 2006). While this same inference cannot be drawn on the word "value" as used in a Supreme Court opinion discussing bankruptcy law, it gives context to what the plurality meant. Without the phrase "value, as of" in that portion of the statute, it cannot be assumed that the *Till* plurality intended to prescribe a present-value

adjustment. More likely, the *Till* plurality opinion used "value" as a shorthand to mean the conversion value of any property (e.g., money, real estate, stocks, bonds) which a debtor may conceivably use to satisfy her plan obligation, rather than indicate that a present-value adjustment is needed where Congress failed to so provide. This distinction is consistent with the Code and is a more reasonable interpretation of the *Till* decision.

If further evidence were needed, the *Till* court provided it in the very same sentence:

> ". . . property to be distributed to a particular secured creditor over the life of the bankruptcy plan has a total 'value, as of the effective date of the plan,' that equals or exceeds the value of the creditor's allowed secured claim—*in this case, $4,000.*"

*Till*, 541 U.S. at 474 (emphasis added); *see also Hammond*, at 10-11 (elaborating). The Court had previously identified that Mr. Till's collateral truck was worth $4,000 on the date the petition was filed. *Id.* at 470. Therefore, the starting point on the effective date of the plan was $4,000, with no interest or time-value adjustment. The Supreme Court *Till* plurality did not believe its own decision called for adjusting the claim to present value—it had the opportunity to do so and the math confirms that it did not.

This result is not surprising or counterintuitive. Chapter 13 promises secured creditors a present-value adjusted payout equal to the "allowed amount of [their secured] claim," nothing more. § 1325(a)(5)(B)(ii); *see also* § 506(a) (determining the amount of a secured claim). While the real value of a claim might erode over time, that is a cost of bankruptcy which is borne equally by all similarly situated creditors.[6] The trustee has identified no statutory or policy rationale for insulating secured claims from the cost of pre-confirmation delay without affording unsecured creditors the same benefit. While true that this treatment may prejudice secured creditors to some extent,

---

[6] This is true both in the insolvent Chapter 7 or discharge-eligible Chapter 13 context where creditors are vying for a limited pot of money, and a Chapter 13 "100% plan" situation where the interest-free breathing room enjoyed pre-confirmation contributes to a debtor's fresh start.

that is the nature of bankruptcy and inherent in cramming down a plan over the objection of a secured creditor. No different than an unsecured or undersecured creditor in Chapter 7 who is forced to wait for a liquidation payout without interest, an uncompensated delay between the petition date and plan confirmation date is part of the balance struck by Congress.

The purpose of determining claims is to crystalize each into a fixed value that can be administered under a liquidation or plan of reorganization. This fundamental policy and the text of the Bankruptcy Code are consistent in that, with few exceptions,[7] the "allowed amount of such claim" under § 1325(a)(5)(B)(ii) is a fixed amount, fixed on the petition date, and is not adjusted for time value beyond the petition date.[8]

## Conclusion

In sum, the trustee's objection cannot be sustained under § 1325(a)(5)(B)(ii). There is no justification under the Code to require a present-value adjustment of plan payments to secured creditors starting from the petition date. And while considering the trustee's raised concerns about practical implementation, the rule Congress intended should not be onerous.[9]

---

[7] "Two major exceptions to the rule have developed over time. One is that creditors may recover post-petition interest when the debtor turns out to be solvent. . . . This exception is included in the Bankruptcy Code at 11 U.S.C. § 726(a)(5). The second exception allows post-petition interest for secured creditors whose security is worth more than the sum of the principal and all interest due. . . . This is codified at 11 U.S.C. § 506(b)." *In re Fesco Plastics Corp.*, 996 F.2d 152, 155-156 (7th Cir. 1993) (internal citations omitted).

[8] This is not to say that the value of the debt underlying the claim (which determines the amount of the claim) cannot be adjusted to present value with an appropriate discount rate. *See In re Oakwood Homes Corp*, 449 F.3d 588, 600 (3rd Cir. 2006). Courts often adjust the "allowed amount" of claims representing a future stream of payments which are accelerated by bankruptcy and would otherwise result in a windfall (e.g., leases, bonds) to reflect their present value, particularly for obligations which do not bear interest and are unaffected by 11 U.S.C. § 502(b)(2). *Id.* at 601. It simply means that once the "allowed amount" of the claim is found, it is not further adjusted as the case progresses by adding pre-effective-date interest.

[9] The trustee argues that having interest accrue from the effective date of the plan makes the task of accurately calculating plan feasibility pre-confirmation difficult, since the date of confirmation cannot be known in advance. ECF No. 59, at 6-7. This may be true, but the effect should be minimal. The trustee might, for example, perform his calculations on any given day as if the effective date of the plan were that day and find that the plan is feasible. Even if the plan were not confirmed that day, the trustee's conclusion that the plan is feasible should not

Debtors are, of course, free to propose plans which are more generous to creditors than the Code requires. 8 Collier on Bankruptcy ¶ 1325.06[b] (16th Ed. 2024). As for the parties' identified trend toward longer periods pre-confirmation in Chapter 13 cases, the trustee and secured creditors have tools to keep cases moving and protect their interests. *See, e.g.,* § 1307(c)(1); *Hammond*, at 16.

      Here, the trustee has demanded more from the debtor than the Code requires. For that reason,

      IT IS ORDERED that the trustee's September 26, 2024 objection to confirmation of the debtor's modified plan is overruled as to the remaining issue of pre-confirmation interest.

Dated: January 22, 2025

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

change over time. Any short delay caused by the Court considering the trustee's recommendation on confirmation might slightly reduce the amount of interest accrued and would make the plan more feasible, not less. Of course, any proposed plan which requires an unjustified pre-confirmation delay to be feasible would be subject to questions of good faith and potentially objectionable on that basis.